# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES W. HUEBNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CENTERSTATE BANK CORPORATION, JAMES H. BINGHAM, MICHAEL J. BROWN, SR., CHARLES DENNIS CARLTON, MICHAEL F. CIFERRI, JOHN C. CORBETT, JODY JEAN DREYER, GRIFFIN A. GREENE, JOHN H. HOLCOMB, III, CHARLES W. MCPHERSON, RICHARD MURRAY, IV, GEORGE TIERSO NUNEZ, II, THOMAS E. OAKLEY, G. RUFFNER PAGE, JR., ERNEST S. PINNER, WILLIAM KNOX POU, JR., DANIEL R. RICHEY, DAVID G. SALYERS, JOSHUA A. SNIVELY, and MARK W. THOMPSON,<br><br>　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles W. Huebner ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by CenterState Bank Corporation ("CenterState" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning CenterState and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against CenterState and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the merger of the Company with South State Corporation ("South State") (the "Proposed Transaction").

2.      On January 27, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock owned.

3.      On April 20, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against CenterState and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CenterState shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a common shareholder of CenterState.

9.      Defendant CenterState is incorporated under the laws of Florida, with its principal executive offices located at 1101 First Street South, Suite 202, Winter Haven, Florida 33880. The Company's common stock trades on the NASDAQ under the symbol "CSFL."

10.      Defendant James H. Bingham ("Bingham") is and has been a director of CenterState at all times during the relevant time period.

11.     Defendant Michael J. Brown, Sr. ("Brown") is and has been a director of CenterState at all times during the relevant time period.

12.     Defendant Charles Dennis Carlton ("Carlton") is and has been a director of CenterState at all times during the relevant time period.

13.     Defendant Michael F. Ciferri ("Ciferri") is and has been a director of CenterState at all times during the relevant time period.

14.     Defendant John C. Corbett ("Corbett") is and has been CenterState's President, Chief Executive Officer and a member of the Company's Board at all times during the relevant time period.

15.     Defendant Jody Jean Dreyer ("Dreyer") is and has been a director of CenterState at all times during the relevant time period.

16.     Defendant Griffin A. Greene ("Greene") is and has been a director of CenterState at all times during the relevant time period.

17.     Defendant John H. Holcomb, III ("Holcomb") is and has been a director of CenterState at all times during the relevant time period.

18.     Defendant Charles W. McPherson ("McPherson") the Vice Chairman of the Company's Board at all times during the relevant time period.

19.     Defendant Richard Murray, IV ("Murray") is and has been a director of CenterState at all times during the relevant time period.

20.     Defendant George Tierso Nunez II ("Nunez") is and has been a director of CenterState at all times during the relevant time period.

21.     Defendant Thomas E. Oakley ("Oakley") is and has been a director of CenterState at all times during the relevant time period.

22.     Defendant G. Ruffner Page, Jr. ("Page") is and has been a director of CenterState at all times during the relevant time period.

23.     Defendant Ernest S. Pinner ("Pinner") is and has been a the Executive Chariman of the Board at all times during the relevant time period.

24.     Defendant William Knox Pou, Jr. ("Pou") is and has been a director of CenterState at all times during the relevant time period.

25.     Defendant Daniel R. Richey ("Richey") is and has been a director of CenterState at all times during the relevant time period.

26.     Defendant David G. Salyers ("Salyers") is and has been a director of CenterState at all times during the relevant time period.

27.     Defendant Joshua A. Snivley ("Snivley") is and has been a director of CenterState at all times during the relevant time period.

28.     Defendant Mark W. Thompson ("Thompson") is and has been a director of CenterState at all times during the relevant time period.

29.     Defendants Bingham, Brown, Carlton, Ciferri, Corbett, Dreyer, Greene, Holcomb, McPherson, Murray, Nunez, Oakley, Page, Pinner, Pou, Rickey, Salyers, Snively, and Thompson are collectively referred to herein as the "Individual Defendants."

30.     The Individual Defendants, along with Defendant CenterState, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

31.     CenterState is a financial holding company, incorporated under the laws of the state of Florida, that owns all of the outstanding shares of CenterState Bank. Headquartered in

Winter Haven, Florida between Orlando and Tampa, CenterState provides traditional retail, commercial, mortgage, wealth management and small business services throughout CenterState Bank's branch network in Florida, Georgia and Alabama, and customer relationships in neighboring states. CenterState Bank also has a national footprint, serving clients coast to coast through its correspondent banking division.

## The Company Announces the Proposed Transaction

32.     On January 27, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> WINTER HAVEN, Fla. & COLUMBIA, S.C.--(BUSINESS WIRE)--CenterState Bank Corporation (NASDAQ: CSFL) ("CenterState"), the parent company of CenterState Bank, and South State Corporation (NASDAQ: SSB) ("South State"), the parent company of South State Bank, jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals with a total market value of approximately $6 billion to create a leading Southeastern-based regional bank.
>
> Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, CenterState shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.
>
> The combined company will operate under the South State Bank name and will trade under the South State ticker symbol SSB on the Nasdaq stock market. The company will be headquartered in Winter Haven, Florida and will maintain a significant presence in Columbia and Charleston, South Carolina; Charlotte, North Carolina; and Atlanta, Georgia.
>
> Robert R. Hill, Jr., CEO of South State, will serve as Executive Chairman of the combined company. John C. Corbett, CEO of CenterState, will be CEO of the combined company. The Board of Directors of the combined company will consist of sixteen directors evenly split between the two legacy companies.
>
> "We are excited to partner with CenterState," said Robert R. Hill, Jr. "We have great respect for John, the management team and the company CenterState has built. This is a great combination of cultures, which will create tremendous value for our shareholders."

"We have known and admired Robert and his team for over a decade, and we believe our two organizations are an outstanding fit," said John C. Corbett, CEO of CenterState. "Combining these two high-performing teams will allow us to build an even stronger company together."

*       *       *

**Approval and Timing**

The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Transaction Advisors**

Piper Sandler & Co. served as financial advisor to South State, with Wachtell, Lipton, Rosen & Katz serving as legal advisor.

Keefe, Bruyette & Woods, A Stifel Company, served as financial advisor to CenterState, with Davis Polk & Wardwell LLP serving as legal advisor.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

33.     On April 20, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

34.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding KBW's Financial Opinion**

35.     The Proxy Statement contains the financial analyses and opinion of Keefe, Bruyette & Woods ("KBW") concerning the Proposed Transaction, but fails to provide material information concerning such.

36.     With respect to KBW's *South State and CenterState Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies selected by KBW for its analysis.

37.     With respect to KBW's *Pro Forma Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies selected by KBW for its analysis.

38.     With respect to KBW's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions selected by KBW for its analysis.

39.     With respect to KBW's *South State Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the multiple range of 11.0x to 15.0x South State's estimated 2025 earnings; and (ii) the inputs and assumptions assumptions underlying KBW's selection of the discount rate range of 7.0% to 11.0%.

40.     With respect to KBW's *CenterState Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that CenterState could generate from January 1, 2020 through December 31, 2024; (ii) CenterState's implied terminal value at the end of such period; (iii) the inputs and assumptions underlying KBW's selection of the

multiple range of 11.0x to 15.0x CenterState's estimated 2025 earnings; and (iv) the inputs and assumptions underlying KBW's selection of the discount rate range of 7.0% to 11.0%.

41.     With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that the pro forma combined entity could generate from January 1, 2020 through December 31, 2024 as a stand-alone company, and the definition of the excess cash flows; (ii) the pro forma combined entity's implied terminal value at the end of that period; (iii) the inputs and assumptions underlying KBW's selection of the multiple range of 11.0x to 15.0x pro forma combined entity's estimated 2025 earnings; and (iv) quantification of the individual inputs and assumptions underlying the discount rate range of 6.5% to 10.5%.

42.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of CenterState within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CenterState, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 12, 2020                                  Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*